UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ALLEN,<br><br>    Petitioner,<br>v.<br>F. JAQUEZ, et al.,<br><br>    Respondents. | No. C 09-3203 SBA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. Respondent has filed a response to the petition and Petitioner has filed a Traverse. Having read and considered the papers submitted and reviewed the record submitted, the Court denies the petition for the reasons set forth below.

## BACKGROUND

On the evening of January 15, 1998, Petitioner travelled to the home of Jerry Chambers ("Chambers"), a local methamphetamine dealer, with the intention of robbing and potentially killing him. Petitioner held a personal grudge against Chambers whom he believed was selling methamphetamine to his (Petitioner's) girlfriend. Petitioner entered Chamber's home and pulled out a shotgun. A struggle ensued between Petitioner and Chambers. The shotgun discharged, killing Chambers.

Defendant was charged in an indictment, filed March 9, 2000, with first degree

murder, attempted first degree residential robbery, first degree residential burglary and being a felon in possession of a firearm. The indictment alleged, as special circumstances, murder committed in the course of attempted robbery and burglary. The first, second, and third counts included an enhancement allegation that defendant had personally used a firearm. It was also alleged that defendant had suffered a prior strike, a prior serious felony conviction, and two prior prison terms. The prosecution sought the death penalty.

The case proceeded to trial on January 10, 2005, in the Contra Costa County Superior Court. On April 18, 2005, the jury found Petitioner guilty as charged. On June 24, 2005, the jury opted against imposing the death penalty and instead recommended a penalty at life without possibility of parole.

On February 24, 2006, the trial court denied Petitioner's new trial motion. The court then sentenced him to an indeterminate term of life without possibility of parole, with a consecutive term of twenty-five years to life for the weapon enhancement, plus a consecutive determinate term of seven years for the prior conviction and prior prison term enhancements.

Petitioner appealed the judgment. The California Court of Appeal affirmed the judgment in an unpublished disposition filed May 16, 2008. The California Supreme Court denied review on August 13, 2008.

On July 14, 2009, Petitioner filed the instant Petition in this Court. As grounds for federal habeas relief, Petitioner claims that: (1) his equal protection rights were violated by the trial court's denial of his objection to the prosecutor's use of his peremptory challenges; (2) the admission of evidence that he faced criminal charges in an unrelated proceeding violated his right to due process; (3) the trial court violated his right to testify when it struck his testimony; and (4) he was denied a fair and impartial jury.

## DISCUSSION

### I. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was

2

"adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

The Ninth Circuit has applied section 2254(d) to a habeas petition from a state prisoner challenging the denial of parole.  See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006); Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam); McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (assuming without deciding that AEDPA deferential standard of review under § 2254 applies to such decisions).

### A.     Section 2254(d)(1)

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States."  Williams v. Taylor, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v.

3

Andrade, 538 U.S. 63, 70-73 (2003).

### 1. **Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

5

The objectively unreasonable standard is not a clear error standard. <u>Andrade</u>, 538 U.S. at 75-76 (rejecting <u>Van Tran</u>'s use of "clear error" standard); <u>Clark</u>, 331 F.3d at 1067-69 (acknowledging the overruling of <u>Van Tran</u> on this point). After <u>Andrade</u>,

> [T]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

<u>Id.</u> In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054 (9th Cir. 2003).

### B. Section 2254(d)(2)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state court record. <u>Taylor v. Maddox</u>, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I. Jury Selection Claim

Petitioner, a Caucasian, claims that the trial court violated his Equal Protection rights by denying his motion challenging the prosecutor's use of peremptory strikes to exclude from the jury three African-American prospective jurors (Hopson, Childs, and Hellums). The relevant facts, taken from the California Court of Appeal's unpublished disposition, are as follows:

> During jury selection, two of the prosecution's first five peremptory challenges

were used to dismiss African-American jurors.  The two represented one-third of the African-American jurors in the venire.  After the second dismissal, [Petitioner] moved to discharge the jury panel under Batson v. Kentucky (1986) 476 U.S. 79 (Batson) and People v. Wheeler (1978) 22 Cal.3d 258 (Wheeler),[1] contending that the prosecution's challenges were racially motivated.  The trial court denied the motion, concluding that no prima facie case of discrimination had been established because (1) [Petitioner] is not an African-American,     (2) the prosecution had not eliminated all persons of color, and (3) there were plausible nondiscriminatory grounds for challenging both of the dismissed African-American jurors.

After the 12 regular jurors had been selected, the jury consisted of one African-American, one Filipino, and 10 Caucasians.  Selection of four alternate jurors then began.  With her last peremptory challenge, the prosecutor dismissed an African-American woman from the alternates.  At that point, [Petitioner] renewed his Batson-Wheeler motion, arguing that the pattern of the prosecution's peremptory challenges, which had removed six minority jurors and four Caucasians, demonstrated that the African-American alternate had been dismissed because of her race.  The trial judge again denied the motion on the ground that [Petitioner] had failed to establish a prima facie case of discrimination, noting that (1) neither [Petitioner] nor Chambers were African-American, and (2) there were plausible nondiscriminatory reasons for challenging the alternate juror.

(Ans., Ex. F at 5.)

The state appellate court, after conducting an independent review of the record, concluded that (1) the trial court correctly determined that petitioner had not made a prima facie case; (2) the trial court correctly determined that the prosecutor provided legitimate, nondiscriminatory reasons for his challenges; and (3) "there was no reasonably likelihood that the prosecution's dismissal of these African-American jurors was improperly motivated by race."  (Id. at 12-14.)  As will be set forth below, the Court finds that the appellate court's ruling was not contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.

The Equal Protection Clause forbids the challenging of potential jurors solely on account of their race.  See Batson v. Kentucky, 476 U.S. 79, 89 (1986).  Batson permits

---

[1] In California, a party who believes his opponent is using his peremptory challenges to strike jurors on grounds of group bias alone may raise the point by way of a timely motion under People v. Wheeler, 22 Cal. 3d 258, 280 (1978).

7

prompt rulings on objections to peremptory challenges pursuant to a three-step process. First, the defendant must make out a prima facie case that the prosecutor has exercised peremptory challenges on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Id. at 93-94.  Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Id. at 97; Wade v. Terhune, 202 F.3d 1190, 1195 (9th Cir. 2000).  Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, 476 U.S. at 98; Wade, 202 F.3d at 1195.  A federal habeas court need not dwell on the first step of the Batson analysis if the matter has proceeded to the second or third step.  "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."  Hernandez v. New York, 500 U.S. 352, 35 (1991).

In evaluating an explanation of racial neutrality, the court must keep in mind that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause, see id., 500 U.S. at 355-62, and that a finding of discriminatory intent turns largely on the trial court's evaluation of the prosecutor's credibility, Rice v. Collins, 546 U.S. 333, 340-42 (2006).  To fulfill its duty, the court must evaluate the prosecutor's proffered reasons and credibility in light of the totality of the relevant facts, using all the available tools including its own observations and the assistance of counsel. Mitleider v. Hall, 391 F.3d 1039, 1047 (9th Cir. 2004).  A legitimate reason "is not a reason that makes sense, but a reason that does not deny equal protection." Purkett v. Elem, 514 U.S. 765, 769 (1995).  What matters is the "genuineness of the motive" behind the racially-neutral explanation, not "the reasonableness of the asserted nonracial motive." Id. "To accept a prosecutor's stated nonracial reasons, the court need not agree with them. The question is not whether the stated reason represents a sound strategic judgment, but

whether counsel's race-neutral explanation for a peremptory challenge should be believed.'" Kesser v. Cambra, 465 F.3d 351, 359 (9th Cir. 2006) (quoting Hernandez, 500 U.S. at 365).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (quoting Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)). More specifically, the findings of the state trial court on the issue of discriminatory intent are findings of fact entitled to the presumption of correctness in federal habeas review, see Elem, 514 U.S. at 769, as are the findings of the state appellate court, see Mitleider, 391 F.3d at 1050; Williams v. Rhoades, 354 F.3d 1101, 1108 (9th Cir. 2004). Under AEDPA, this means that a state court's findings of discriminatory intent are presumed sound unless a petitioner rebuts the presumption by clear and convincing evidence. Miller-El v. Dretke, 545 U.S. 231, 240 (2005). "[W]e must defer to the [California Court of Appeal's] conclusion that there was no discrimination unless that finding 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Cook v. LaMarque, 593 F.3d 810, 816 (9th Cir. 2010) (quoting Section 2254(d)(2)). A federal habeas court may grant habeas relief only "if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge." Rice, 546 U.S. at 338-41.

**A.     First Batson Step: Prima Facie Case of Discriminatory Intent**

The defendant must make out a prima facie case that the prosecutor has exercised peremptory challenges on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Batson, 476 U.S. at 93-94. Statistics alone can show such purpose at this initial stage. Paulino v. Castro, 371 F.3d 1083, 1091 (9th Cir. 2004). The record shows that the prosecutor struck 50% (3 out of 6) of African-American jurors --- two from the six prospective African-American jurors in selecting the actual jury, and one more African-American from the pool of alternate jurors. On these bare facts, there is a facially plausible prima facie case of discriminatory intent.

### B.      Second <u>Batson</u> Step: Prosecutor's Stated Reasons

With respect to the second <u>Batson</u> step, however, the record does not support Petitioner's assertion that the prosecutor's decision was based on constitutionally infirm considerations. The state court reasonably determined under <u>Batson/Wheeler</u> that the prosecutor struck Hopson, Childs, and Hellums for legitimate, nondiscriminatory reasons. Hopson stated that he was moderately against the death penalty, expressed moral and religious beliefs that would make it difficult for him to impose the death penalty, and stated that he had been arrested by police after they had intervened in a domestic violence incident. (Ans., Ex. F at 13.) It was not unreasonable to conclude that Hopson's reservations concerning the death penalty --- a penalty his juror's oath would compel him to consider imposing --- provided a legitimate, nondiscriminatory reason for striking him. His negative experience with law enforcement provided an additional nondiscriminatory reason, as such experience might well impede his ability to fairly judge the prosecution's case.

Childs also voiced reservations about imposing the death penalty, and had a "disturbing history of violence in her immediate family, which would have brought her into contact with the criminal justice system." (<u>Id.</u> at 13.) While she believed she could be open minded, the record established that Childs still had not resolved whether she was comfortable imposing the death penalty. If a juror's beliefs, including those on the death penalty, would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath" the juror may be properly excluded. <u>See</u> <u>Morgan v. Illinois</u>, 504 U.S. 719, 734-35 (1992); <u>Wainwright v. Witt</u>, 469 U.S. 412, 424 (1985). Additionally, Childs's had relatives who were victims of violent crime and/or were perpetrators of abuse. 20 RT 3937-38, 20 RT 3941-43, 30 RT 3944-46. Thus, there were issues other than race that distinguished Childs from other jurors who were not challenged.

Hellums, the stricken alternate juror, had a highly equivocal opinion about the death penalty. She twice indicated that she was "neutral" on the subject, while at other times said

that she did not believe she had the right to decide whether a person lives or dies. She did, however, state that she could get past her personal feelings. 24 RT 4754. It was reasonable to conclude that such an equivocal attitude toward the death penalty provided a legitimate, nondiscriminatory reason to believe that Hellums could not fulfill the terms of her juror's oath to set aside personal feelings, be fair and impartial and to follow the court's instructions. Also, Hellums had a negative experience with law enforcement. Specifically, she expressed suspicion of police officers, whom she believed "plant" evidence and testify falsely to support their incrimination of innocent suspects. (Ans., Ex. B, Vol. 24 at 4805.) Her negative views of law enforcement provided additional legitimate, nondiscriminatory reasons to strike her.

### C. Intentional Discrimination

As to the third Batson step which queries whether there was intentional discrimination, Petitioner has not shown clear and convincing evidence to rebut the presumption that the trial court's determination, and the appellate court's Batson/Wheeler determination that Petitioner did not carry his burden of proving intentional discrimination. Nor has Petitioner shown why this Court should favor Petitioner's interpretation of the record over the trial court's credibility determination.

Additionally, this Court has independently reviewed the record and conducted a comparative juror analysis. This independent comparative juror analysis does not change the conclusion reached above.[2] At the very least, a grant of habeas relief is precluded because it was not "unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge." Rice, 546 U.S. at 338-41. In sum, Petitioner's Batson claim is DENIED.

---

[2] Petitioner states nothing regarding a comparative juror analysis in his petition, and makes conclusory, undetailed allegations regarding the issue in his traverse.

## II.     Admission of Unrelated Criminal Charges

At trial, the prosecutor presented evidence that Petitioner had robbed a Petco store approximately three weeks after the killing of Chambers.  This evidence was admitted to show that Petitioner acted with the same intent when entering Chambers's residence. Petitioner claims that such evidence was prejudicial character evidence.

The state appellate court concluded that though it was "a close call," the crimes were sufficiently similar to justify admission of the evidence, and denied Petitioner's claim:

> [Petitioner] prepared for both crimes in the same way, toting a firearm and covering his face with a black mask to disguise his identity.  In both, he walked unannounced into a location in which he believed substantial cash was located and pointed his firearm at the occupants.  Further, the crimes were committed within the same general area and within a few weeks of one another, and in both cases [Petitioner] fired his weapon.  The trial court did not abuse its discretion.

(Ans., Ex. F at 16.)  The jury was instructed that it could regard such evidence solely as proof of intent.  (Id. at 17.)

Petitioner's habeas claim fails because no remediable constitutional violation occurred. A federal habeas petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA, the Supreme Court having reserved this as an open question.  Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006).

Petitioner's related contention that the prejudicial effect of the conviction evidence outweighed its probative value also fails.  First, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Second, the admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  However, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate

due process. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

Here, Petitioner has not shown that a specific constitutional guarantee was violated or that he was denied a fair trial. The jury could draw the permissible inference that Petitioner harbored a similar intent in both instances. Furthermore, any prejudicial effect was ameliorated by the juror instructions to regard such evidence as possible proof of intent, not of bad character or proof of guilt of the current charges he faced. This Court must presume that the jury followed its instructions and used the evidence appropriately. Richardson v. Marsh, 481 U.S. 200, 206 (1987). This claim is DENIED.

### III.    Cross-Examination

Petitioner testified at trial and presented an alibi defense. He refused, however, to answer the prosecution's questions regarding the Petco robbery, citing self-incrimination concerns.[3] After much procedural wrangling, and after Petitioner refused to retake the stand for cross-examination, the trial court struck his testimony, concluding that he had waived his Fifth Amendment rights by taking the stand to give his direct testimony. The court also instructed the jury to disregard Petitioner's testimony in its entirety. Petitioner claims that the trial court's ruling violated his right to testify and his right against self-incrimination.

According to the state appellate court, the trial court was correct in determining that Petitioner waived his Fifth Amendment rights, and in striking his testimony. It also rejected Petitioner's contention that "direct testimony should not be stricken when a witness's refusal to answer cross-examination addresses only collateral matters":

> [B]y declining to retake the stand [Petitioner] effectively refused to respond to any cross-examination, not merely cross-examination on collateral matters, thereby justifying the court in striking his entire testimony under the federal authorities cited. Further, we do not read the federal rule to be materially different from California law. The cases cited by [Petitioner] state that a witness's entire direct testimony should not be stricken if the refusal to answer goes only to collateral matters. [Citations omitted.] The California rule that efforts should be made to avoid striking all testimony is essentially the same, since it is only when the refusal to answer is addressed to noncollateral matters that prejudice cannot be cured by means other than striking all testimony.

---

[3] He did stipulate that he was facing charges in the unrelated Petco robbery.

13

(Ans., Ex. F at 20.)

The Court agrees that Petitioner's claim is without merit. A defendant who testifies in his own behalf waives his privilege against self-incrimination with respect to the relevant matters covered by his direct testimony and subjects himself to cross-examination by the government. See Brown v. United States, 356 U.S. 148, 154-55 (1958); United States v. Hearst, 563 F.2d 1331, 1338 (9th Cir. 1977). If a defendant testifies but then refuses to be cross-examined, his testimony accordingly may be stricken. See Williams v. Borg, 139 F.3d 737, 740-43 (9th Cir. 1998) "The right to testify carries with it the obligation to submit to cross-examination." Id. at 743 (citation omitted). As these authorities show, when Petitioner testified and then refused to be cross-examined at all, the trial court had ample reason to strike his testimony on grounds that he had waived his Fifth Amendment rights. The state appellate court's determination was, therefore, reasonable. Accordingly, this claim is DENIED.

## IV. Fair and Impartial Jury

Petitioner claims that the trial court violated his right to a fair and impartial jury by failing to conduct a hearing regarding alleged juror misconduct. Duncan v. Louisiana, 391 U.S. 145, 148-49 (1968) (criminal defendants guaranteed due process right to a fair trial and impartial jury). The relevant facts are as follows. After the jury rendered its verdict,

> [Petitioner] [ ] filed a motion seeking a new trial on the grounds of jury misconduct. Submitted with the motion was a handwritten declaration from one of the jurors, which stated that during the guilt phase of the trial "the jury discussed and considered the Petco robbery to determine the identity of Jerry Chambers['s] killer. Specifically the jury discussed and considered the Petco robbery as evidence that [Petitioner] was the guy who killed Jerry Chambers." A second declaration from a private investigator stated, without providing any details, that the jurors "discussed the Petco robbery as evidence of the identity of the killer of Jerry Chambers" during the guilt phase. The court ruled that the declarant juror's statement that "the jury discussed during the guilt phase of deliberations the Petco robbery" was admissible, but the remainder of his declaration was inadmissible "because it goes to the subjective reasoning processes of the jurors." The court ruled the investigator's declaration to be inadmissible hearsay in its entirety. Based on the limited amount of admissible evidence, the trial court found that [Petitioner] had not satisfied his burden of proof and denied the motion for a new trial.

(Ans., Ex. F at 8.)

The state appellate court disposed of this claim on state law grounds. It reasoned that (1) the trial court did not abuse its discretion in determining that the statements were inadmissible hearsay under state evidentiary rules; and (2) the first declaration had an "inherent ambiguity" and therefore did not show a strong possibility of prejudicial misconduct. (Id. at 23-24.)

Petitioner is not entitled to habeas relief on this claim. The state appellate court's decision was not unreasonable. First, Petitioner has not cited any binding Supreme Court precedent in his favor that conflicts with the state court's decision. Second, existing federal law militates against a finding in favor of Petitioner. The Ninth Circuit has held that jury testimony regarding deliberations is not admissible under federal rules of evidence unless it concerns "facts bearing on extraneous or outside influences." United States v. Rutherford, 371 F.3d 634, 640 (9th Cir. 2004). While Rutherford concerns a federal evidentiary rule, it is instructive and remains highly persuasive authority for this Court. See McCart v. Lamarque, No. S-04-0866 FCD, 2009 WL 891052, at *10 (E.D. Cal. Mar. 31, 2009) (applying Rutherford in a habeas proceeding). In the instant matter, as in Rutherford, the juror declarations did not concern facts bearing on extraneous or outside influences, but rather on information gathered through the trial. Accordingly, the state appellate court's decision was not unreasonable. The claim is therefore DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of Respondents and close the file.

15

**IT IS SO ORDERED.**

DATED: 9/28/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

RICHARD L. ALLEN,

        Plaintiff,

v.

F. JAQUEZ et al,

        Defendant.

Case Number: CV09-03203 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 12, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Richard Leroy Allen F-17156
Pelican Bay State
P.O. Box 7500
Crescent City, CA 95531

Dated: October 12, 2012

Richard W. Wieking, Clerk
By: Lisa Clark, Deputy Clerk

G:\PRO-SE\SBA\HC.09\Allen203.hc.md.frm      17